# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| BLITZ U.S.A., Inc., *et al.*,[1] | ) Case No. 11-[_____] (___) |
| | ) |
| Debtors. | ) (Joint Administration Requested) |
| | ) |

## DEBTORS' MOTION FOR ENTRY OF AN ORDER
## (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE USING THE CASH MANAGEMENT SYSTEM, (B) MAINTAIN EXISTING BANK ACCOUNTS AND BUSINESS FORMS, AND (C) CONTINUE INTERCOMPANY ARRANGEMENTS AND (II) GRANTING INTERCOMPANY CLAIMS ADMINISTRATIVE PRIORITY

Blitz U.S.A., Inc. ("*Blitz*") and certain of its affiliates, as debtors and debtors in possession (collectively, the "*Debtors*"), file this motion (this "*Motion*") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "*Order*"), authorizing the Debtors to continue using their cash management system, bank accounts and business forms. In support of the Motion, concurrently herewith, the Debtors submit the *Declaration of Rocky Flick, President and Chief Executive Officer of Blitz U.S.A., Inc. in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "*First Day Declaration*") and respectfully state as follows:

### Jurisdiction and Venue

1.      The United States Bankruptcy Court for the District of Delaware (the "*Court*") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: LAM 2011 Holdings, LLC (8742); Blitz Acquisition Holdings, Inc. (8825); Blitz Acquisition, LLC (8979); Blitz RE Holdings, LLC (9071); Blitz U.S.A., Inc. (8104); and F3 Brands LLC (2604). The location of the Debtors' corporate headquarters and the Debtors' service address is: 404 26th Ave. NW Miami, OK 74354.

3.      The statutory bases for the relief requested herein are sections 345, 363, 364, 365, 503, 507, 1107(a), and 1108 of title 11 of the United States Code (the "***Bankruptcy Code***"), Rules 6003 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), and Rules 2015-2 and 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "***Local Bankruptcy Rules***").

## Introduction

4.      As described in the First Day Declaration, the Debtors are the industry leader in portable fuel containment. Since its inception as the supplier of the traditional, olive-drab jerry can to the U.S. military throughout World War II, Blitz U.S.A., Inc. and its predecessor companies have evolved into the producer of the best fuel containment products in the world. Today, the red plastic jerry can is an American icon. With its global headquarters in Miami, Oklahoma, the Debtors employ approximately 250 employees and achieve annual sales of approximately $80 million. Through end of fiscal year 2011, the Debtors generated $80 million in revenue and $6 million in adjusted EBITDA.

5.      Notwithstanding its industry leading position and time-tested product line, the Debtors have recently become the subject of over 35 pending lawsuits alleging, among other things, certain product deficiencies. Despite the Debtors' firm belief that its products are safe and free of deficiencies, on the date hereof (the "***Petition Date***"), each of the Debtors filed a petition with the Court under chapter 11 of the Bankruptcy Code to address the challenges posed by the overwhelming pending litigation. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated. Concurrently

with the filing of this Motion, the Debtors have requested procedural consolidation and joint administration of these chapter 11 cases.

## Relief Requested

6.     Blitz and F3 Brands LLC ("*F3 Brands*") each operate an integrated cash management system (the "*Cash Management System*") in the day-to-day operation of their businesses.    The Cash Management System provides a well-established mechanism for the collection, management, transfer and disbursement of funds used in the Debtors' businesses. The Cash Management System facilitates the Debtors' cash monitoring, forecasting, and reporting, and enables the Debtors to maintain control over the administration of their accounts (the "*Bank Accounts*") located at various financial institutions (the "*Banks*").

7.     Accordingly, the Debtors seek authority to (a) continue to use, with the same account numbers, all of the Bank Accounts in their Cash Management System, (b) treat the Bank Accounts for all purposes as accounts of the Debtors as debtors in possession, (c) open new debtor in possession accounts, if needed, (d) use, in their present form, all correspondence and business forms (including check stock, letterhead, purchase orders, and invoices) and other documents related to the Bank Accounts existing immediately before the Petition Date, without reference to the Debtors' status as debtors in possession, and (e) continue performing Intercompany Transactions in the ordinary course of business.

8.     The Debtors further request that the Court authorize the Debtors' banks to (a) continue to maintain, service, and administer the Bank Accounts, and (b) debit the Bank Accounts in the ordinary course of business on account of (i) checks drawn on the Bank Accounts that are presented for payment at such banks or exchanged for cashier's checks prior to the Petition Date, (ii) checks or other items deposited in the Bank Accounts prior to the Petition Date that have been dishonored or returned unpaid for any reason (including associated fees and

costs), to the same extent the Debtors were responsible for such items prior to the Petition Date, and (iii) undisputed, outstanding service charges owed to such banks as of the Petition Date on account of the maintenance of the Debtors' Cash Management System, if any.

## The Debtors' Cash Management System

9.     The Debtors use their Cash Management System to efficiently collect, transfer and disburse funds generated by the Debtors' business operations.   The Debtors' financial personnel manage the Cash Management System from their corporate headquarters in Miami, Oklahoma.  It is essential to enable the Debtors to centrally control and monitor corporate funds and to ensure cash availability and liquidity.  The Cash Management System also ensures that ongoing trade obligations are settled on a timely basis and develops and monitors cash flow forecasts for the Debtors' nationwide operations.  Furthermore, the system in place reduces administrative expenses by facilitating the movement of funds and enhances the development of accurate account balance information as it was specifically tailored to enable the Debtors to control and monitor corporate funds, ensure cash availability and liquidity, comply with the requirements of their financing agreements, reduce administrative expenses by facilitating the movement of funds, and enhance the development of accurate account balances and presentment information.  These controls are crucial given the significant volume of cash transactions managed through the Cash Management System.

10.     On average, approximately $3,000,000.00 flows through the Cash Management System on a weekly basis to service cash received and costs incurred related to the production, sales and promotion of the Debtors' products.

11.     The Cash Management System consists of approximately 10 Bank Accounts, 8 of which are with the Bank of Oklahoma and two of which are with Security Bank. The Debtors maintain each of these bank accounts at financial institutions insured by the Federal Deposit

4

Insurance Corporation (the "**FDIC**"). For demonstrative purposes, a diagram illustrating the flow of funds through the Cash Management System is attached as **Exhibit B** hereto.

12. The Cash Management System has two main components: (a) cash collection, including the collection of payments made to the Debtors by their customers; and (b) cash disbursements to fund the Debtors' operations, primarily consisting of (i) payments to vendors and service providers to ensure a steady supply of products available for purchase by the Debtors' customers, and (ii) payments to fund payroll.

## I. Cash Collection and Disbursement.

13. As described in the First Day Declaration, the Debtors generate revenue primarily by selling their products to national retailers. The funds generated from sales are deposited at the end of each business day into the Debtors' two main operating accounts (for Blitz U.S.A., Inc. and F3 Brands LLC, respectively) held at the Bank of Oklahoma (together, the "***Main Operating Accounts***"). Funds from the Main Operating Accounts are directly transferred into one of four disbursement accounts (collectively, the "***Disbursement Accounts***").

- **The Medical Fund Account:** The Debtors maintain two Medical Fund Accounts through the Bank of Oklahoma for funding payments made on account of employee benefits, including those for medical, vision and dental coverage. Each week, the Debtors manually transfer funds directly from the Main Operating Accounts to the Medical Fund Accounts to cover checks processed by UMR, Inc., the primary administrator of the Debtors' employee benefits.

- **The Controlled Disbursement Account:** On a pay-as-needed basis, the Debtors maintain and directly fund from the Main Operating Accounts two Controlled Disbursement Accounts through the Bank of Oklahoma to: (a) fund payroll for the Debtors' employees; and (b) satisfy outstanding payables owed to vendors and service providers in connection with the operation of their businesses.

- **The Flex Spend Account:** The Debtors maintain and directly fund from the Main Operating Accounts (through payroll deductions) two Flex Spend Accounts through the Bank of Oklahoma to fund this employee benefit obligation.

- **The Workman's Compensation Account:** The Debtors maintain and directly fund from the Main Operating Accounts, on a pay-as-needed basis, a Workman's

Compensation Account through Security Bank from which the Debtors write checks for their self-funded workman's compensation program.

14.     The Debtors also maintain a general Bank Account with Security Bank in Miami, Oklahoma to deposit small checks, including those on account of purchases from employees or received directly through the mail by the Debtors.

15.     In addition to the Disbursement Accounts, the Debtors use credit cards as an integral part of their Cash Management System.  The Debtors customarily pay for a variety of their expenses, including employees' business-related expenses incurred in performing their employment obligations and accounts payable (collectively, the "*Business Expenses*") with creditors.  In most cases, the Business Expenses are billed directly to the Debtors via the employees' corporate American Express credit cards (collectively, the "*Purchase Cards*").  The Debtors also provide certain of their employees with American Express credit cards to charge certain approved Business Expenses.  Approximately, eight (8) American Express credit cards have been issued and are utilized for charging expenses for goods and services purchased for, or incidental to, the Debtors' businesses. If the Debtors were forced to cease utilizing the Purchase Cards, it would severely disrupt the Debtors' business operations, as well as create additional costs, which would harm the Debtors and their estates.  Accordingly, the continued use of the Purchase Cards after the Petition Date as a part of the Cash Management System is essential to the Debtors' operations.

## II.     The Debtors' Existing Business Forms.

16.     In the ordinary course of business, the Debtors use a variety of checks and business forms.  To minimize expenses to the Debtors' estates and avoid unnecessarily confusing their employees, customers, and suppliers, the Debtors believe it is appropriate to continue to use all correspondence and business forms (including letterhead, purchase orders, and invoices) as

RLF1 5563717v. 3

such forms were in existence immediately before the Petition Date—without reference to the Debtors' status as debtors in possession—rather than requiring the Debtors to incur the expense and delay of ordering entirely new business forms. Accordingly, once existing forms are depleted, the Debtors shall commence printing "Debtor in Possession" on checks the Debtors print themselves (within sixty days of the Petition Date), and the Debtors will replenish their existing stock of business forms with new forms identifying their status as debtors in possession.

## III. The Debtors' Intercompany Transactions.

17. In the ordinary course of business, certain of the Debtors' operating entities maintain business relationships with each other, resulting in intercompany receivables and payables (the "***Intercompany Claims***") arising from the following transactions (the "***Intercompany Transactions***"):

A. **F3 Brands Payroll:** As described in the First Day Declaration and the Wages Motion,[2] in October 2011, Blitz formally spun off some of its additional product lines into F3 Brands which is now a Blitz subsidiary and debtor in these cases. Since October 2011, Blitz has been funding payroll for the benefit of F3 Brands' employees and will continue to do so until F3 Brands has enough cash to independently pay its employees, which is expected to occur at year-end, at which time a significant amount of its outstanding receivables can be or would otherwise have been collected.

B. **Reliance Payroll:** As described in the First Day Declaration and the Wages Motion, Blitz acquired Reliance Products, Inc. ("***Reliance***") in early 2011. Reliance's management team and manufacturing facilities are primarily located in Winnipeg, Canada, but Blitz has been funding payroll for the benefit of 3 Reliance Employees that reside in the United States.

C. **Intercompany Leases:** Blitz RE Holdings, LLC, a Blitz affiliate and debtor in these cases owns all the property on which Blitz and F3 Brands operate their businesses. The Debtors maintain a complex and well-documented system of

---

2 *See* Debtors' Motion for Entry of Interim and Final Orders Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries And Other Compensation And Reimbursable Expenses, (B) Pay And Honor Obligations Related To Employee Medical And Similar Benefits And (C) Continue Their Employee Medical And Similar Benefits filed contemporaneously herewith, pursuant to which the Debtors have requested authority to pay employees of F3 Brands and Reliance.

intercompany sale-leaseback transactions between Blitz RE Holdings, LLC, F3 Brands and Blitz.

18.     Domestically, as funds are disbursed through the Cash Management System, at any given time, there may be Intercompany Claims owing by one Debtor to another, which are more often than not, settled by book entry rather by an actual transfer of cash.   If the Intercompany Transactions were to be discontinued, the Cash Management System and related administrative controls would be disrupted to the Debtors' detriment.[3]  The Debtors will continue to maintain records of Intercompany Transactions in the postpetition period.

### Basis for Relief

I.     **The Court Should Approve the Debtors' Cash Management System.**

    A.     **The Continued Use of the Debtors' Cash Management System is Essential to the Debtors' Operations and Restructuring Efforts.**

19.     As discussed above, the Debtors' business and financial affairs are complex, requiring the Debtors to collect, disburse, and move funds through numerous Bank Accounts in the United States.     Pursuant to 28 U.S.C. § 586(a)(3) and the chapter 11 guidelines (the "*U.S. Trustee Guidelines*") established by the Office of the United States Trustee (the "*U.S. Trustee*"), debtors in possession may be required to, among other things, (a) establish one debtor-in-possession account for all estate funds required for the payment of taxes (including payroll taxes), (b) close all existing Bank Accounts and open new debtor-in-possession accounts, (c) maintain a separate debtor-in-possession account for cash collateral, and (d) obtain checks

---

[3]     Because the Debtors engage in Intercompany Transactions on a regular basis and such transactions are common among enterprises similar in size and scope to the Debtors' enterprises, the Debtors believe that the Intercompany Transactions are ordinary course transactions within the meaning of section 363(c)(1) of the Bankruptcy Code and, thus, do not require the Court's approval.  Nonetheless, out of an abundance of caution, the Debtors are seeking express authority to engage in such transactions on a postpetition basis.  The continued performance of the ordinary course Intercompany Transactions is integral to ensuring the Debtors' ability to operate their businesses as debtors in possession.

RLF1 5563717v. 3

that bear the designation "debtor in possession" and reference the bankruptcy case number and type of account.

20.    Given the Debtors' corporate and financial structure, it would be difficult and unduly burdensome to establish an entirely new cash management system for each of the Debtors' operating entities. To comply with the U.S. Trustee Guidelines, the Debtors also would need to execute new signatory cards and depository agreements and create a new system for manually issuing checks and paying postpetition obligations.[4] The delays that would result from opening these accounts, revising cash management procedures, and instructing customers to redirect payments, would disrupt the Debtors' business at this critical time. In addition, requiring the Debtors to maintain separate accounts would decentralize their Cash Management System, which would create unneeded disruption to the Debtors' operations as they attempt to restructure in chapter 11. Compliance with the U.S. Trustee Guidelines would again require the Debtors to restructure their cash management processes at significant administrative cost. Accordingly, the Debtors respectfully request that the Court waive the requirements imposed by the U.S. Trustee Guidelines.

21.    The Debtors do not maintain investment accounts for excess cash. Section 345(a) of the Bankruptcy Code authorizes a debtor in possession to deposit or invest money of the estates, "as will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a). If deposits or investments are not insured, guaranteed, or backed by the full faith and credit of the U.S. government, section 345(b) of the Bankruptcy Code provides that, unless the Court orders otherwise, the holder of such

---

[4]    Notwithstanding anything herein to the contrary, the Debtors reserve the right to close their prepetition Bank Accounts and open new accounts as may be necessary in the Debtors' business judgment. The Debtors, however, will give prompt notice to the U.S. Trustee and any official committees that may be appointed in these chapter 11 cases through the monthly operating reports.

RLF1 5563717v. 3

deposits or investments must obtain a bond in favor of the United States secured by the undertaking of an adequate corporate surety. *Id.* § 345(b). Nonetheless, section 345(b) allows the court to dispense with this limitation "for cause." *Id.* Because the Debtors do not maintain investment accounts for excess cash, the Debtors seek a limited waiver of the requirements of section 345(b) of the Bankruptcy Code. The limited waiver is without prejudice to the Debtors' right to seek a permanent waiver of such requirements, or extensions of the sixty day waiver period.

22.     The Court may authorize the Debtors to continue to use their existing Cash Management System, pursuant to section 105(a) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). As set forth herein, the Debtors submit that approval of the continued use of the Debtors' routine Cash Management System and Bank Accounts is appropriate and justified.

23.     Permitting the Debtors to continue using their existing Cash Management System would be consistent with prior precedent of courts in this Circuit. Indeed, courts in the Third Circuit have noted that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." *See, e.g.*, *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part and rev'd in part*, 997 F.2d 1039 (3d Cir. 1993). The United States Court of Appeals for the Third Circuit has agreed, emphasizing that requiring a debtor to maintain separate accounts "would be a huge administrative burden and economically inefficient." *Columbia Gas*, 997 F.2d at 1061; *see also In re Southmark Corp.*, 49 F.3d 1111,

1114 (5th Cir. 1995) (finding a cash management system allows a debtor "to administer more efficiently and effectively its financial operations and assets").

**B. Maintaining the Existing Cash Management System Will Facilitate a Smooth Transition into Chapter 11 and Will Not Harm Parties in Interest.**

24. The Debtors' continued use of their Cash Management System will facilitate the Debtors' transition into chapter 11 by, among other things, avoiding administrative inefficiencies and expenses and minimizing delays in payment of postpetition debts. The Debtors respectfully submit that parties in interest will not be harmed by the Debtors' maintenance of the existing Cash Management System (including continued use of all Bank Accounts) because the Debtors have implemented appropriate mechanisms to ensure that unauthorized payments will not be made on account of obligations incurred prior to the Petition Date. Specifically, with the assistance of their legal and financial professionals, the Debtors have implemented internal control procedures that prohibit payments on account of prepetition debts without the prior approval of the Debtors' finance department. In light of such protective measures, the Debtors submit that maintaining the Cash Management System is in the best interests of the Debtors' estates and creditors.

25. In addition, the Cash Management System is similar to those commonly employed by corporate entities of comparable size and complexity to the Debtors. The Cash Management System provides the Debtors with the ability to (a) quickly create status reports on the location and amount of funds, which in turn, allows management to track and control such funds, (b) ensure cash availability, and (c) reduce administrative costs through a centralized method of coordinating the collection and movement of funds.

RLF1 5563717v. 3

**C.      The Court Should Authorize the Debtors to Continue
Using Debit, Wire, and Automatic Clearing House Payments.**

26.      The Debtors request that the Court grant further relief from the U.S. Trustee

Guidelines to the extent they require the Debtors to make all disbursements by check.   In

particular, the U.S. Trustee Guidelines require that all receipts and all disbursements of estate

funds must be made by check with a notation representing the reason for the disbursement.   In

the ordinary course of business, the Debtors conduct transactions by debit, wire, or other similar

methods.   In addition, a certain percentage of the Debtors' customer receipts are received

through automated clearing house direct deposits ("*ACH Payments*") and wire transfer

payments. If the Debtors' ability to conduct transactions by debit, wire, ACH Payment, or other

similar methods is impaired, they may be unable to perform under certain contracts, their

business operations may be unnecessarily disrupted, and their estates will incur additional costs.

Indeed, the Debtors are required by certain federal and state taxing authorities to submit tax

payments electronically through wire or ACH Payments, and failure to do so results in the

imposition of penalties.

**D.      The Court Should Authorize the Banks to Continue to Maintain, Service,
and Administer the Debtors' Bank Accounts in the Ordinary Course of
Business.**

27.      The Debtors submit that parties in interest will not be prejudiced or injured by the

Debtors' maintenance of their Bank Accounts in the ordinary course of business.   The Debtors

strongly believe that replacing their existing Bank Accounts with new accounts as of the Petition

Date pursuant to the U.S. Trustee Guidelines would needlessly interrupt their operations and

impair their efforts to preserve the value of their estates and reorganize in an efficient manner.

28.      Thus, the Debtors respectfully request that the Court authorize the Banks to

continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as

RLF1 5563717v. 3

debtors in possession, without interruption and in the ordinary course of business. In this regard, the Banks should be authorized to receive, process, honor, and pay any and all checks, ACH Payments, and other instructions, and drafts payable through, drawn, or directed on such Bank Accounts after the Petition Date by holders, makers, or other parties entitled to issue instructions with respect thereto; *provided* that any check, advice, draft, or other notification that the Debtors advised the Banks to have been drawn, issued, or otherwise presented prior to the Petition Date may be honored only to the extent authorized by order of the Court.

29.     The Debtors further request that the Court authorize the Banks to accept and honor all representations from the Debtors as to which checks, drafts, wires, or ACH Payments should be honored or dishonored consistent with any order of the Court and governing law, whether such checks, drafts, wires, or ACH Payments are dated prior to or subsequent to the Petition Date. The Debtors also request that, to the extent the Banks honor a prepetition check or other item drawn on any account that is the subject of this Motion either (a) at the direction of the Debtors, (b) in a good faith belief that the Court has authorized such prepetition check or item to be honored, or (c) as a result of an innocent mistake made despite the above-described protective measures, the Banks, as applicable, will not be deemed to be liable to the Debtors or to their estates on account of such prepetition check or other item honored postpetition. The Debtors respectfully submit that such relief is reasonable and appropriate because the Banks are not in a position to independently verify or audit whether a particular item may be paid in accordance with a Court order or otherwise.

30.     In the ordinary course, the Banks charge, and the Debtors will pay, honor, or allow the deduction from the appropriate account, certain service charges and other fees, costs, and expenses (collectively, the "*Bank Fees*"). The Debtors respectfully request that the Court

13

authorize the Banks to (a) continue to charge the Debtors the Bank Fees and (b) charge-back returned items to the Bank Accounts, whether such items are dated prior to, on, or subsequent to the Petition Date, in the ordinary course of business.

31.     In similar large chapter 11 cases, courts in this district regularly have waived the U.S. Trustee Guidelines and allowed large corporate debtors to maintain ordinary course banking activities, including deduction of ordinary course banking fees, on the grounds that they are impractical and potentially detrimental to a debtor's postpetition business operations and restructuring efforts. *See, e.g.*, *In re Friendly Ice Cream Corp.*, No. 11-13167 (KG) (Bankr. D. Del. Oct. 6, 2011); *In re Neb. Book Co.*, No. 11-12005 (PJW) (Bankr. D. Del. June 28, 2011); *In re L.A. Dodgers LLC*, No. 11-12010 (KG) (Bankr. D. Del. June 28, 2011); *In re Ambassadors Int'l, Inc.*, No. 11-11002 (KG) (Bankr. D. Del. Apr. 5, 2011); *In re Local Insight Media Holdings, Inc.*, No. 10-13677 (Bankr. D. Del. Nov. 19, 2010); *In re OTC Holdings Corp.*, No. 10-12636 (Bankr. D. Del. Aug. 27, 2010); *In re NEC Holdings Corp.*, No. 10-11890 (Bankr. D. Del. July 13, 2010); *In re MiddleBrook Pharms., Inc.*, No. 10-11485 (Bankr. D. Del. May 4, 2010); *In re Atrium Corp.*, No. 10-10150 (Bankr. D. Del. Jan. 21, 2010); *In re Int'l Aluminum Corp.*, No. 10-10003 (Bankr. D. Del. Jan. 6, 2010).[5]

**II.     The Court Should Authorize the Debtors to Continue Using their Existing Business Forms.**

32.     The Debtors submit that parties in interest will not be prejudiced if the Debtors are authorized to continue to use their business forms substantially in the forms existing immediately prior to the Petition Date.  As set forth above, the Debtors will begin printing "Debtor in Possession" on all checks generated by their accounting system and will order new

---

[5]     Because of the voluminous nature of the orders cited herein, such orders are not attached to this Motion.  Copies of these orders are available upon request of the Debtors' proposed counsel.

business forms with a "Debtor in Possession" designation once their existing stocks are depleted. The Debtors submit that such efforts protect the interests of parties conducting business with the Debtors on a postpetition basis while, at the same time, avoiding unnecessary expenses and administrative delays at this critical time. With respect to checks, which the Debtors print themselves, the Debtors will begin printing these checks with a "Debtor in Possession" designation within sixty days of the Petition Date.

33.     Parties doing business with the Debtors undoubtedly will be aware of their status as debtors in possession and, thus, changing business forms is unnecessary and unduly burdensome. In other large cases, courts in this district have allowed debtors to use their prepetition business forms without the "debtor in possession" label; at least until the debtors' existing business form stock was depleted. *See, e.g.*, *In re Friendly Ice Cream Corp.*, No. 11-13167 (KG) (Bankr. D. Del. Oct. 6, 2011); *In re Neb. Book Co.*, Case No. 11-12005 (PJW) (Bankr. D. Del. June 28, 2011); *In re L.A. Dodgers LLC*, No. 11-12010 (KG) (Bankr. D. Del. June 28, 2011); *In re Ambassadors Int'l, Inc.*, No. 11-11002 (KG) (Bankr. D. Del. Apr. 5, 2011); *In re Local Insight Media Holdings, Inc.*, No. 10-13677 (Bankr. D. Del. Nov. 19, 2010); *In re OTC Holdings Corp.*, No. 10-12636 (Bankr. D. Del. Aug. 27, 2010); *In re NEC Holdings Corp.*, No. 10-11890 (Bankr. D. Del. July 13, 2010); *In re MiddleBrook Pharms., Inc.*, No. 10-11485 (Bankr. D. Del. May 4, 2010); *In re Atrium Corp.*, No. 10-10150 (Bankr. D. Del. Jan. 21, 2010); *In re Int'l Aluminum Corp.*, No. 10-10003 (Bankr. D. Del. Jan. 6, 2010).[6]

34.     The Debtors represent that if the relief requested herein is granted, the Debtors will implement appropriate mechanisms to ensure that no payments will be made on account of debts incurred prior to the Petition Date (other than those authorized by the Court). To prevent

---

[6]     Because of the voluminous nature of the orders cited herein, such orders are not attached to this Motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

RLF1 5563717v. 3

the inadvertent, unauthorized payment of prepetition claims, the Debtors will work closely with the Banks to ensure that appropriate procedures are in place to prevent checks that were issued prepetition from being honored without the Court's approval.

**III.     The Court Should Authorize the Debtors to Continue Performing Intercompany Transactions and Grant Administrative Status to Intercompany Claims.**

35.     As described above, in the ordinary course of business, the Debtors' various entities maintain business relationships with each other, resulting in intercompany receivables and payables in the ordinary course of business.   If the Intercompany Transactions are discontinued, a number of services provided by and among the Debtors' entities would be disrupted.   Moreover, discontinuing the Intercompany Transactions could impair the Debtors' ability to pay benefits to their employees, and make timely payments to certain vendors. Accordingly, the Debtors believe that continuation of the Intercompany Transactions is in the best interests of the Debtors' estates and their creditors, and seek authority to enter into such Intercompany Transactions in the ordinary course of business.

36.     Additionally, the Debtors respectfully request that, pursuant to section 364(c)(1) of the Bankruptcy Code, all Intercompany Claims arising after the Petition Date be accorded administrative status.   Notably, administrative expense treatment for intercompany claims, as requested here, has been granted in other comparable chapter 11 cases in this district and in other districts. *See, e.g., See, e.g., In re Friendly Ice Cream Corp.*, No. 11-13167 (KG) (Bankr. D. Del. Oct. 6, 2011); *In re Ambassadors Int'l, Inc.*, No. 11-11002 (KG) (Bankr. D. Del. Apr. 5, 2011); *In re Local Insight Media Holdings, Inc.*, No. 10-13677 (Bankr. D. Del. Nov. 19, 2010); *In re OTC Holdings Corp.*, No. 10-12636 (Bankr. D. Del. Aug. 27, 2010); *In re NEC Holdings Corp.*, No. 10-11890 (Bankr. D. Del. July 13, 2010); *In re MiddleBrook Pharms., Inc.*, No. 10-

RLF1 5563717v. 3

11485 (Bankr. D. Del. May 4, 2010); *In re Atrium Corp.*, No. 10-10150 (Bankr. D. Del. Jan. 21, 2010); *In re Int'l Aluminum Corp.*, No. 10-10003 (Bankr. D. Del. Jan. 6, 2010).[7]

37.     At any given time, there may be balances due and owing by and among the Debtors' various entities. The Debtors, through the Banks, maintain records of, and are able to ascertain, trace, and account for, the Intercompany Transactions. Moreover, the Debtors and the Banks will continue to maintain such records, including records of all current intercompany accounts receivables and payables, in the postpetition period. Thus, the Debtors respectfully request that the Court authorize the Debtors to continue Intercompany Transactions in the ordinary course of business.

### The Requirements of Bankruptcy Rule 6003 Have Been Satisfied

38.     As described above, the Debtors are seeking authority pursuant to the order to continue to operate the Cash Management System. Under Bankruptcy Rule 6003, this Court may authorize the relief requested herein within the 21-day period after the Petition Date because such relief is necessary to avoid immediate and irreparable harm to the Debtors' estates. *See* FED. R. BANKR. PROC. 6003 (b), (c). Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern. *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001).

39.     Because of the complexity of the Debtors' operations, any disruption to the Cash Management System would seriously harm the Debtors and their estates. Without the Cash Management System, the Debtors would be unable to track incoming receipts and make on-time

---

[7]  Because of the voluminous nature of the orders cited herein, such orders are not attached to this Motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

payments, thereby precluding the Debtors from determining their current liquidity. This, along with the possibility that third parties would refuse to provide essential services in the event the Debtors failed to remit payment, could cause a diminution in the value of the Debtors' estates to the detriment of all parties in interest. As a result, immediate and irreparable harm would result without the relief requested herein being granted. Accordingly, the Debtors respectively submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003(b) and (c) and seek authority to continue to operate the Cash Management System.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

40. To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### Notice

41. The Debtors have provided notice of the Motion to: (a) the Office of the United States Trustee for the District of Delaware; (b) the entities listed on the Consolidated List of Creditors Holding the 50 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) counsel to the agent for the Debtors' proposed postpetition secured lenders; (d) counsel to the agent for the Debtors' prepetition secured lenders; (e) the Internal Revenue Service; and (f) any party that may have a particular interest in this motion. As this Motion is seeking "first day" relief, within two business days of the hearing on this Motion, the Debtors will serve copies of this Motion and any order entered in respect to this Motion as required by Local Bankruptcy Rule 9013-1(m). In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

RLF1 5563717v. 3

WHEREFORE, the Debtors respectfully request that the Court enter an order granting the relief requested herein and granting such other further relief as is just and proper.

Dated: November 9, 2011          **RICHARDS, LAYTON & FINGER, P.A.**
       Wilmington, Delaware

Daniel J. DeFranceschi (No. 2732)
Michael J. Merchant (No. 3854)
Julie A. Finocchiaro (No. 5303)
Amanda R. Steele (No. 5530)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 651-7700
Facsimile:     (302) 651-7701
Email:         defranceschi@rlf.com
                merchant@rlf.com
                finocchiaro@rlf.com
                steele@rlf.com

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

# EXHIBIT A

**Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| BLITZ U.S.A., Inc., *et al.*,[1] | ) Case No. 11-[_____] (____) |
| | ) |
| Debtors. | ) (Joint Administration Requested) |
| | ) |

## ORDER (I) AUTHORIZING THE DEBTORS TO
## (A) CONTINUE USING THE CASH MANAGEMENT SYSTEM,
## (B) MAINTAIN EXISTING BANK ACCOUNTS AND BUSINESS
## FORMS, AND (C) CONTINUE INTERCOMPANY ARRANGEMENTS AND
## (II) GRANTING INTERCOMPANY CLAIMS ADMINISTRATIVE PRIORITY

Upon the motion (the "***Motion***")[2] of Blitz U.S.A., Inc. ("***Blitz***") and certain of its

affiliates, as debtors and debtors in possession (collectively, the "***Debtors***"), for entry of an order

(the "***Order***") authorizing the Debtors to continue using their existing cash management system,

Bank Accounts, and business forms and to continue performing ordinary course Intercompany

Transactions, all as more fully set forth in the Motion; and upon the Declaration of Rocky Flick,

President and Chief Executive Officer of Blitz U.S.A., Inc. in Support of the Debtors' Chapter 11

Petitions and First Day Motions (the "***First Day Declaration***"); and the Court having found that:

(i) this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334; (ii) the Motion is a

core proceeding pursuant to 28 U.S.C. § 157(b)(2); (iii) venue of this proceeding and the Motion

in this District is proper pursuant to 28 U.S.C. § 1408; (iv) the relief requested in the Motion is in

the best interests of the Debtors' estates, their creditors and other parties in interest; (v) notice of

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: LAM 2011 Holdings, LLC (8742); Blitz Acquisition Holdings, Inc. (8825); Blitz Acquisition, LLC (8979); Blitz RE Holdings, LLC (9071); Blitz U.S.A., Inc. (8104); and F3 Brands LLC (2604). The location of the Debtors' corporate headquarters and the Debtors' service address is: 404 26th Ave. NW Miami, OK 74354.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Motion.

the Motion was adequate and appropriate under the circumstances; and (vi) no other or further notice need be provided; and the Court having reviewed the Motion and having heard statements in support of the Motion at a hearing held before the Court (the "*Hearing*"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and the Court having found that relief requested in the Motion is necessary to prevent immediate and irreparable harm; and any objections to the relief requested herein having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefore, it is hereby ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      The Debtors are authorized to continue using the Cash Management System as described in the Motion.

3.      The Debtors are authorized to: (a) continue to use, with the same account numbers, the Bank Accounts in existence on the Petition Date, lists of which are attached as **Exhibit 1** hereto; (b) treat the Bank Accounts for all purposes as accounts of the Debtors as debtors in possession; and (c) use, in their present form, all correspondence and business forms (including, without limitation, letterhead, purchase orders, and invoices), and other documents related to the Bank Accounts, without reference to their status as debtor in possession.

4.      Except as otherwise expressly provided in this order, the Banks are authorized to continue to service and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course, and to receive, process, honor, and pay any and all checks, drafts, wires, and automated clearing house transfers issued and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be; *provided* that the Debtors shall commence printing "Debtor in Possession" on checks the

Debtors print themselves within sixty days of the Petition Date and replace their existing stock of business forms with new forms identifying their status as debtors in possession as existing forms are depleted.

5.  The Banks are authorized to debit the Debtors' accounts in the ordinary course of business without the need for further order of this Court on account of: (a) all checks drawn on the Debtors' accounts which are cashed at the Banks' counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; (b) all checks or other items deposited in one of the Debtors' accounts with the Banks prior to or after the Petition Date that have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent that the Debtors were responsible for such items prior to the Petition Date; and (c) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Bank as service charges for the maintenance of the Cash Management System.

6.  Notwithstanding any other provision of this Order, no Bank that honors a prepetition check or other item drawn on any account that is the subject of this Order (a) at the direction of the Debtors, (b) in good faith belief that the Court has authorized such prepetition check or item to be honored, or (c) as the result of an innocent mistake made despite implementation of reasonable item handling procedures, shall be deemed to be liable to the Debtors or their estates or otherwise in violation of this Order.

7.  The Banks are authorized to charge, and the Debtors are authorized to pay, honor, or allow the Bank Fees, and charge back returned items to the Bank Accounts in the ordinary course.

8.  The Debtors are authorized to open any new Bank Accounts or close any existing Bank Accounts as they may deem necessary and appropriate in their sole discretion; *provided*

3

that the Debtors give notice to the Office of the United States Trustee for the District of Delaware and any statutory committees appointed in these chapter 11 cases in the next monthly operating report.

9.    For banks at which the Debtors hold accounts that are party to a Uniform Depository agreement with the Office of the United States Trustee for the District of Delaware, within fifteen (15) days of the date of entry of this Order the Debtors shall (a) contact each bank, (b) provide each of the Debtors' employer identification numbers and (c) identify each of their accounts held at such banks as being held by a debtor in possession in a bankruptcy case.

10.    For banks at which the Debtors hold accounts that are not party to a Uniform Depository agreement with the Office of the United States Trustee for the District of Delaware, the Debtors shall use their good-faith efforts to cause the bank to execute a Uniform Depository agreement in a form prescribed by the Office of the United States Trustee within forty-five (45) days of the date of this Order. The U.S. Trustee's rights to seek further relief from this Court on notice in the event that the aforementioned Banks are unwilling to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee are fully reserved.

11.    Paragraphs 9 and 10 of this Order apply to any bank accounts opened by the Debtors subsequent to entry of this Order; provided, however, that the deadlines referenced in the paragraphs shall run from the respective dates on which the accounts are opened.

12.    The Debtors are authorized to continue performing Intercompany Transactions in the ordinary course of business and to honor and pay obligations in connection with the Intercompany Transactions.

4

13.     All Intercompany Claims against a Debtor by another Debtor, arising after the Petition Date as a result of the Intercompany Transactions, are hereby accorded administrative expense status.

14.     The Banks are authorized to pay obligations in accordance with this or any separate order of the Court.

**15.**     Except as otherwise provided in this Order or in a separate order of the Court, the Banks shall not honor or pay any bank payments drawn on the listed Bank Accounts or otherwise issued prior to the Petition Date.

16.     The Debtors' are granted a limited waiver from the requirements of section 365(b) of the Bankruptcy Code, without prejudice to their rights to seek further relief.

17.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

18.     Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of Bankruptcy Rule 6004(a) and the Local Bankruptcy Rules are satisfied by such notice.

19.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

20.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

Dated: _____, 2011
        Wilmington, Delaware

_____
United States Bankruptcy Judge

RLF1 5563717v. 3

# EXHIBIT 1

## Bank Accounts

# Bank Accounts

| Bank | Account Type | Account No. | Account Description |
|------|--------------|-------------|---------------------|
| Bank of Oklahoma | Main Operating Account | XXX7779 | Main Operating Account |
| Bank of Oklahoma | Medical Fund Account | XXX1466 | Disbursement |
| Bank of Oklahoma | Controlled Disbursement Account | XXX7526 | Disbursement |
| Bank of Oklahoma | Flex Spend Account | XXX5940 | Flex Spending |
| Bank of Oklahoma | Main Operating Account | XXX0913 | Main Operating Account |
| Bank of Oklahoma | Medical Fund Account | XXX8987 | Disbursement |
| Bank of Oklahoma | Controlled Disbursement Account | XXX9055 | Disbursement |
| Bank of Oklahoma | Flex Spent Account | XXX8998 | Flex Spending |
| Security Bank | General Account | XXX6549 | General Account |
| Security Bank | Disbursement Account | XXX4745 | Disbursement |

# EXHIBIT B

## Cash Management System Flow Chart

# Cash Management System Flow Chart



**Blitz U.S.A., Inc.**
**Account Structure and Service Overview**
**Security Bank**

```
        Blitz U.S.A., Inc.                    Blitz U.S.A., Inc.
        General Account                  Workmans Comp Account
       Account #9296549                     Account #9404745
```